Council, good afternoon. I have Judge Fuentes and Judge Cowan who are on the line and we're ready to hear argument. Let's hear from Appellant and please tell me how much time you'd like for rebuttal. Good afternoon, Your Honor. Joseph Kanfer on behalf of PSI and I'd like to reserve three minutes for rebuttal if I could. Very well, go ahead, sir. Thank you, Your Honor. The central issue in this case is whether the Pennsylvania Rules of Civil Procedure allowed the District Court to enter judgment against PSI who is a garnishee and a stranger to the underlying dispute despite PSI raising defense to liability but without providing PSI the opportunity to present evidence supporting those defenses. So it's important to remember that this underlying dispute is between US Pipelining and its subcontractor Sanact and this is a payment dispute relating to a construction project in Hawaii. Essentially, Sanact sued US Pipelining for non-payment and attained a judgment after a bench trial. Right, but here's the question for you. Every garnishee is a stranger, right? That's right, Your Honor. Very few garnishees are like intimate buddies with both the debtor and the creditor. So you started off in the right place, which is the rules. So let me ask you this question. We're bound by 311D, right? 311D provides service of the writ upon the garnishee, restrains the garnishee paying any debt to or for the account of the defendant and from delivering any property of the defendant. So my question is, doesn't the application of the rule mean that the question of setoffs is not among the initial issues for the district court? And wouldn't it require sidestepping Martin v. Throckmorton, which you can put Martin v. Throckmorton to the side for a moment. Let's just deal with that language 311D, which seems too antithetical to the approach you want us to take. Well, I think the problem, Your Honor, with that position is that assumes that there is property of the debtor in possession of the garnishee. There's only property in possession if the debtor has the right to receive those funds. So as a threshold question, the issue is, does the debtor have the right? Because SANAC's rights don't rise any further than U.S. isn't entitled to that money. And there's no property in SANAC's possession. So that rule that you're citing only comes into play once that threshold issue has been resolved. So the setoff issue comes first before the issue of paying a debt on behalf of the debtor. And what case does the setoff issue goes first? Because Martin v. Throckmorton doesn't say it, neither does Lancaster County. Now, admittedly, Lancaster County and Martin v. Throckmorton are old. And if you tell me you've found a more recent precedent that overrules either of them, I want to be edified. But until you do, we have to deal with them. Well, respectfully, Your Honor, Lancaster County Bank in particular, that actually supports our position because the court's holding it. What's that, Your Honor? No, I said, great. Tell me. The Supreme Court of Pennsylvania's holding in that case is that you can't go outside of answers or receive extrinsic evidence to qualify or contradict interrogatory answers. So this goes back to where I started. Pennsylvania's rules are set up to benefit the garnishee, okay? Not to benefit the garnishee, but protect the garnishee because the garnishee is a stranger. So the rules are a little more relaxed. Interrogatories and answers are pleadings, but they're not held to the same standard as normal pleadings in Pennsylvania court. All you have to do is say enough, and this is the Helms case, say enough to put the defendant on notice, put the plaintiff on notice of what the defense is, and that's enough to get you past this precipice for admission stage. So in the Gross case, the court held that you couldn't go outside the answers to qualify or contradict interrogatory answers. In other words, Gross only holds that you can't look beyond the pleading to contradict what the garnishee is saying as its defense. In other words, you can't do what Sanak did here, which is come in and say, hey, you know what? There's no contract, therefore we're entitled to judgment. Well, no, you can't do that, and that's a violation of Gross. Gross doesn't hold that you can't look beyond the face of the complaint, excuse me, the face of the answer when trying to figure out if the defenses need to have a factual hearing. If you look at some of these cases, look at the OE, the operating engineer's local 66 case. In that case, the court held just a mere reference to retainage was sufficient to raise a defense. You didn't have to go into a lot of factual detail. Look at the Collins case. In that case, the insurer only referenced a failure to cooperate, and the court held that was good enough. And look at the Helms case. The Helms case says... As you look at all of these cases, and I love that you have the litany right on the tip of your tongue, but here's the question. As you look at these cases, number one, are they cases where there's no denial of liability? Most of these cases, there's a denial of liability, and when there's a denial of liability, then it becomes a much simpler case, right? What we started with here in the first iteration of your answers to interrogatories is, yes, we owe a debt. In the second iteration, as we now know with the advice of counsel involved, now it's qualified, but the underlying admission that was present in the first iteration is present in the second, and that is we do owe money, PSI does, to U.S. pipelining. Now, if that's so, that's all that SANEC needs to know. I understand that you're talking about setoffs, and I'd like to get down into the weeds a little bit with the amounts of money, but in the first instance, there was an admission. How is it that we are to turn our back on that? Well, I respectfully disagree that there was an admission, your honor, because again, this kind of goes to the operating engineer's local 66 case. In the construction industry, when a contractor talks about a contract balance, that's a specific term of art. That doesn't mean I owe $522,000. What that means is, look, if you take the contract and you add in all the contours and subtract what was paid, that's what's left, but these setoffs are defenses to liability, so there's no liability if these defenses are valid. For example, the contract specifically allows PSI to subtract any to pay U.S. pipelining subcontractors and material suppliers and subtract that amount from the amount due. The contract also specifically allows PSI to withhold payment if PSI has back charges, and in this case, he decided to pay something like $200,000. Yeah, but if you're referring to the joint check agreement, that is an agreement between three parties, MTC, PSI, and U.S. pipelining, right? So I was going to wait to get into it, but since you're into it, let's get into it. The $206,000 and the $16,000, I know there are some pluses there, that are alluded to in the August 30, 2019 letter, those are, you'll correct me if I'm wrong, from the joint check agreement. Is that wrong? That's not wrong, your honor, and I did want to point out, in addition to the joint check agreement, there actually is a provision in the PSI subcontract, and this is discussed on page six of my brief, and you can find it on page 101 of the appendix. There is actually a provision in the subcontract that specifically allows PSI to withhold money if U.S. pipelining hasn't paid its subcontractors, so even if we didn't have the joint check agreement, they'll have a defense to under its agreement with U.S. pipelining. It's right in the subcontract. Isn't that a fight between U.S. pipeline and PSI, a fight that SANEC is not a party to? SANEC just wants to know, I'm a judgment creditor. If you owe U.S. pipelining money, I'd like that money instead of giving it to them. That's correct, your honor, but remember that SANEC has no higher rights than U.S. pipelining does. If U.S. pipelining isn't entitled to that money because PSI has a defense, SANEC isn't entitled to that money, so SANEC stands in U.S. pipelining's shoes, and what the Pennsylvania Rules of Civil Procedure contemplate is if there is a dispute over liability, then you essentially have to go through the litigation. I understand SANEC would love to be able to come in and just give us some money and you guys work it out later on, but essentially that's forcing PSI to be a guarantor of this debt, and PSI has no contract to do that, and that's not something the rules require. SANEC can only recover what U.S. pipelining could recover, so no, it's yes, SANEC would have to get into this dispute, these factual issues, but that's how the government works, your honor. Maybe I misunderstood. Did you say SANEC stands in the shoes of U.S. pipelining? Yes. SANEC can only recover what PSI can recover, is that accurate? No, SANEC can only recover what U.S. pipelining could recover from PSI. Okay, got it, okay. Can you address this question of the decision of the district court judge making a determination on issues that are presented by corporate defendants, and I understand that under Pennsylvania rules, corporate defendants must appear in court by counsel. Could you address that issue? Yes, your honor, and that's also true under the federal rules as well, and a number of cases that I believe I cite in my brief that say that a pleading, because there's nothing about interrogatories and answer to interrogatories and garnishment, but we have to start from the premise that if you look at the Pennsylvania rules, that answers to interrogatories and attachment are essentially a type of pleading. It gets filed with the court, and it's a pleading. You can get judgmental pleadings as the basis for further litigation. It's essentially a pleading, so if you start from that premise, there are tons of cases in both Pennsylvania and federal law that say that, look, a corporation has to appear through a lawyer. Corporation can't appear pro se, and this is part of the reason, this confusion that's been created because of the, frankly, inartful answers of my client to these interrogatories. If they had been, I don't think we would be here. Yeah, that didn't happen in this case, right? That didn't happen, your honor. I didn't get involved until after judgment had already been entered. I believe I entered my How that affects the district court's ultimate decision in this case? Well, frankly, I think the district court erred by relying on the interrogatory answers because they are void, because they were filed by a corporation, not through counsel, and under the federal rules, you can't do that. What should have happened is they should have been stricken. PSI should have been given the opportunity to file its amended answers, and those should have been the basis for further litigation. And with counsel, I assume? With counsel, yes, your honor. Okay. I'm still wondering what are we going to do with this case? I mean, if what I read is correct in your brief and what you say now is correct, then this is essentially a nullity, and this matter has to be reheard before the district court with the corporate defendants represented by counsel. Yes, your honor, but more than just I attached proposed, and they're in the appendix, I had attached proposed revised interrogatories that more clearly address these issues. Those original interrogatories need to be stricken. PSI needs to have the opportunity to file interrogatories through counsel so that this case can be litigated properly, and we can avoid this kind of procedural confusion. Well, let me ask you this question about procedural confusion. After the second set of answers to interrogatories were filed, the PSI did make a motion before the district court that were represented by counsel in that instance. That's the 60B motion, right? Yes, your honor. Okay, now why couldn't the 60B motion be the vehicle for which PSI's rights could be vindicated? Well, if you look at the... Obviously, if you won the motion, you would have got the same relief that you're alluding to now. Well, if you look at the Alston case, that's not sufficient to provide the due process. So, you have a situation, I think it was a case, and the prisoner filed suit against a number of prison officials. They moved for summary judgment. The plaintiff responded to the motion, and then in their reply brief, they raised a new issue. They raised a new issue that hadn't been briefed before. And this was a case that had been... The motion had been referred to a magistrate judge. So, the magistrate judge issued a report and recommendation, and then the plaintiff had the opportunity to object to the report and recommendation, right? Of course, before the district judge entered an order. Ultimately, the district judge entered an order granting summary judgment. The prisoner appealed, and this court held... Well, he had an opportunity to object to the report and recommendation, but that wasn't sufficient. He needed to have an opportunity to respond and to put forth all of his evidence in front of the magistrate judge. So, this post facto rule 60 motion is not enough to satisfy due process. And frankly, setting aside the due process issue, it's not what the rules of civil procedure contemplate. Did you have to have a hearing for due process to be sufficient? Obviously, the district court, in its opinion, alludes to the fact of notice, opportunity to be heard. Why was a hearing, and presumably an in-person hearing, necessary? There was an opportunity to be heard. Why isn't that enough? Well, I think the district court conflated two separate things. The district court focused on the fact that the original writ of execution said, hey, PSI, you're being served with a writ of execution. Go get your lawyer. And the district court held that the answers to interrogatories were PSI's opportunity to answer that. It was its opportunity to be heard. But there's a second hearing that has to happen. And no, it doesn't have to be an in-person hearing, Your Honor. For a motion for summary judgment, it doesn't have to be an in-person hearing. But for due process to be satisfied, PSI has to be put on notice. Hey, look, come forward with all of your evidence. Bring it all in. And that never happened. PSI never had that opportunity. Instead, SANAC took this procedure that's supposed to be a ministerial act, essentially. The clerk is not supposed to exercise judicial judgment. It's just when it's so clear, for example, when a bank admits having money in a bank account, you can enter judgment. That's what this procedure is meant for. It's not meant for SANAC to come in and put pages of argument in its precipice, which is what happened here, and then have the clerk rule in its favor. PSI never had an opportunity to respond, and it never had an opportunity to counter the factual averments that were set forth in that precipice. So that's where the due process violation comes in, Your Honor. Let me ask you a hypothetical, right? So let's say this was a little cleaner in the following sense. Let's say PSI did, in fact, owe US Pipeline, let's say, a half a million dollars. There's no other intermediate parties, but there's a debt, and it's unquestioned, okay? Now, that's from Project A, let's say. Some other project they have together, we'll call it Project B. As it happens, US Pipeline owes PSI money, okay? And let's say the entity seeking garnishment is seeking to garnish an amount that PSI clearly owes, and even if you do the swap-out, two direct parties, there's still more money going from PSI to US Pipeline, which would mean that the entity seeking garnishment could satisfy their debt, because of the debt that arises between PSI and US Pipeline in the hypothetical. You with me? Yes, Your Honor. Okay. So let's assume that the amount that they're seeking is an amount that clearly is supposed to go from PSI to US Pipeline. Let's say US Pipeline owes PSI 250,000, PSI owes US Pipeline 500,000. So, right, there's clearly, when you swap it out, an amount going from PSI to US Pipeline. In that circumstance, SANEC comes in. Any problem collecting? Let's say they only were owed $100,000. Make it easy. No, there's no problem collecting. SANEC would be entitled to the $100,000, and that's the rule case. If you have a set-off, in your hypothetical, Your Honor, PSI owes US Pipeline 500,000. There's a $250,000 set-off. There's a net of $250,000 left. SANEC says, hey, give me $100,000. I'm entitled to this. Then SANEC would be entitled to that. Absolutely. The reason that that's not the case here is because the amount of these set-offs that are claimed by PSI exceed the amount that is owed. Well, here's what I want to say about that point. Help me on one point. Yes, Your Honor. The $200,000 and $6,000 and $16,000, is that money, if not paid by US Pipelining, is that a debt that PSI would owe to these third parties? So there's two separate debts. There's a $300,000 debt, and I think that's the one Your Honor's referring to. I get that. That's not what I'm asking you about. I'm asking you about, right, that's the MTC pursuant to the joint check agreement. I got that. I'm talking about you. I thought you said there are two other set-off amounts, one for $206,000 plus, and one for $16,000 plus. Is that right? Yes, Your Honor. Okay. My only question is, is that amount, those set-off amounts, if US Pipeline doesn't pay those, is PSI on the hook for those? For the $16,000, yes. For the $206,000, that's the amount PSI has already incurred. Those are damages that PSI incurred. Those are rental, frankly, it's rental fees for equipment that I believe PSI has already paid and already incurred those amounts. So yes, if US Pipeline doesn't pay PSI, then PSI has lost the $206,000 because it's already paid. Okay, so US Pipelining owed that, PSI stood in its stead and paid the amount. No, that's not correct, Your Honor. I'm sorry. So this is a little complicated. This is a wastewater treatment plant, and US Pipelining was relining these pipes that go into it. However, while it was relining them, those pipes had to be shut down. PSI, at its expense, as part of his contract, had to rent equipment to bypass those pipes. Now, US Pipelining was a month late finishing its work, which means PSI incurred an extra month of rental for that equipment, and PSI had to pay for that extra month of rental. It's not an expense it paid on behalf of US Pipelining, it's an expense that PSI incurred as a result of US Pipelining. Okay, that's it. Thank you. May I ask a question? Counsel, did you know what the current relationship is between PSI and US Pipeline? My understanding is that US Pipelining has completed its work, and I don't think PSI is going to use them again for any further projects after this scenario. Okay, got it. Thank you. Judge Cowan? No, I have no questions of the appellant. All right, well, we'll hear from you on rebuttal, Mr. Kamper. Thank you so much. Thank you, Your Honor. Counsel? Yes, good afternoon, Your Honors. My name is John Konarich, and I represent the appellees in this case. I think I can answer a lot of these questions by going through a chronological analysis here, and I think the first and most important question, of course, is whether PSI unequivocally admits that PSI owes money to US Pipelining. And I direct your opinion where he says that in response to the person in our story asking whether PSI owed any money, US Pipelining, PSI answered yes. PSI also stated PSI still has an outstanding balance owed to US Pipelining, a balance of $522,791, a distinct amount that they are absolutely saying is owed to US Pipelining. I don't think anybody can agree, if we would stop there, that that is an unequivocal statement of money that is owed to US Pipelining. Now, how can we say that when, how can we conclude the answer rose to the level of unequivocal admission, when at best, perfectly juxtapose the balance owed to the defendant with various other amounts owed? There's nothing here unequivocal. There's definitely something that they're saying, they don't owe this amount. We owe this amount, but it's subject to some sort of other set-off or liability. Okay, I appreciate that, Judge. If you read that in the answer to the interrogatory, it specifically says they still owe. They is referring to US Pipelining still owes money to various contractor suppliers on our job. So, and then they go on to delineate amounts, but they're essentially saying in that answer that it is, they refers to US Pipelining still owes money to various contractors. Okay. Now, Your Honor, I think what you have to look at in conjunction with this answer is what was served upon the PSI, the garnishee, at the time that they received the interrogatories. They received interrogatories to garnishee. It says specifically in that interrogatory, it says you are required to file answers to the following interrogatories within 20 days. Now, what else was attached to that that was served on PSI was the precipe for writ of execution, which identified the amounts and then a writ of execution itself, which specifically said the US Marshal saying you are directed to attach the property of defendant not levied upon in the possession of PSI Pumping Solutions Incorporated. And it refers specifically to accounts payable to US Pipelining. And very specifically, it says under subparagraph P on the writ of execution, it says the garnishee is enjoined from paying any debt to or for the account of the defendant and for delivering any property of the defendant or otherwise disposing thereof. Now, here's where it gets important. Also attached to the writ of execution was the writ of execution notice, which specifically says you being PSI may have legal rights to prevent your property from being taken. A lawyer can advise you more specifically, okay? And it then goes on to say as normal service of process, you should take this paper to an attorney. Now, in addition to that, the claim of exemption form was provided as well. And that claim of exemption form was PSI's opportunity to claim any exemptions and defenses that they may have that they are owed that money. And I submit to you that in the certificate of service when PSI filed their answers to these service, I hereby certify that on or before the date of filing, it basically says we have received the answers to the interrogatories, writ of execution, notice of writ of execution, and claim for exemption. And of course, it gives a verification. Council, let me ask you a question. Yes, sir. Is it your position that regardless of what US pipeline may have owed to PSI that we are only supposed to look at the amount that PSI owes to US pipelining? I'm sorry. I didn't hear the last part. There was some clicking. No worries. What I said is, are we to disregard what PSI said is owed to it by US they, and it refers to US pipelining still owes money. I say to you that in the agreement, the subcontractor agreement between US pipelining and PSI, the agreement itself, specifically in paragraph 37 says that litigation of any claim disputes and other matters in arising now relating to this subcontract or the breach thereof shall be instituted in the court of common pleas of York County, Pennsylvania, or in the United States District Court for the Middle District of Pennsylvania. And I submit to you that the answer that they gave in their interrogatory was that they, being US pipelining, is owed the specific amount of money. And I say to you that any claims or disputes regarding money that PSI may have been owed, the contract itself says that those claims of any disputes are to be in the court of common case. Okay, I'll accept that. Let me ask you this hypothetical. PSI owes US pipelining $500,000. Okay. Yes. US pipelining owes PSI $1 million. Each of these amounts is not in dispute, right? Yes. PSI owes US pipelining 500. US pipelining owes PSI $1 million. Now, in this hypothetical, Zanuck is owed $500,000 from US pipelining. Okay? Yes. So, is it your position that regardless of what US pipelining owes PSI, that in this hypothetical, PSI has to pay Zanuck $500,000? I think so, yes. Really? Now, please tell me- Wait, wait. I think maybe I'm confused on this now. You're saying that US pipelining or PSI owes US pipelining? It's just two flows of money, right? Yeah. PSI owes US pipelining 500,000. It doesn't matter what it's about. US pipelining owes PSI $1 million, right? Obviously from separate deals, but those are the numbers, right? Zanuck is owed 500,000 from US pipelining. It's the reverse hypothetical that I gave your adversary, right? So, the question is, must PSI pay Zanuck $500,000? I don't know. Well, so, but let me tell you the reason why I'm asking the question and why I need you to do a little better than I don't know. Because either setoffs are part of this consideration or they're not. We asked both parties to look at Lancaster, very short case, very old case. And you all have looked at Martin v. Throckmorton on your own. So, with those cases in mind and this hypothetical, it would seem that the law in the state of Pennsylvania would say, yes, PSI pays Zanuck. Doesn't seem equitable, frankly, but that's one way of looking at these cases. So, I need your help as to how we should look at this. If we're to take the money that was owed here, PSI, US pipelining, or Zanuck garnished the money that PSI had, which was $500,000. But Zanuck is only owed $200,000 of that, okay? I'm just rounding figures off. I submit to you that PSI, under the garnishment, should be obligated to pay the amount that, in fact, is owed to Zanuck. It does not represent the entire amount. In other words, I think there was one case cited where they had garnished for $19,000. The bank account only had $7,000 in and the court under the judgment against the garnishee for the $7,000. It may not have been the full amount, but it was the amount in the account. Here, in other words, if Zanuck is owed $150,000 and PSI has $500,000 in it and there are claims for the rest of the money, I think that Zanuck should be paid out of the money because they garnished and attached those funds. Unlike in the Lancaster County Bank case, where there was an assignment of the money prior to the garnishment, the amount that, in other words, the money was not answered interrogatory was, in fact, negated by the fact that there was an assignment of that money prior to the garnishment. Now, counsel, let me ask a question. Judge Cownie here. The Pennsylvania Superior Court has explained that a proclamatory who acts purely in a ministerial capacity can enter judgment only if the answers are clear and unequivocal because to analyze or interpret the answer would be an exercise of judicial function, which is in excess of the proclamatory's power. Hasn't this line been passed here by entering this garnishment when the answer clearly showed that PSI had setoffs or claims that were not or might even exceed the amount that was owed to U.S. I don't think that it was, and as Judge Sanchez said, that the additional statements do not raise any legal or factual issue wherein the court could construe PSI's answers as an effective denial. Well, how can you say it doesn't raise an issue? They say we owe this money, but there's offsets to it. The proclamatory cannot exercise a judicial function and make any fact findings. Anyone looking at this sees there is something here that is amiss. They didn't say, look, under all circumstances, we owe this money even without back charges. But I am saying that the interpretation by Judge Sanchez and the question really becomes, was his ruling properly applying and interpreting the law? And I submit to you that Judge Sanchez came down on the side that he properly applied the law to the interpretation of whether or not those statements really were an effective denial. Well, that's the question before this panel. If the district court failed to comply with Pennsylvania's unequivocal admission liability requirement when it entered the judgment pursuant to 3146, don't you agree that the PSI is entitled to review under 60B? No, Your Honor. Say that. Yes. Under 60B, it's well established in the circuit that a motion under Rule 60B is left to the sound discretion of the district court, and such motion should only be granted in extraordinary circumstances where extreme and unexpected hardship would occur. The district court followed Pennsylvania rules of civil procedure, and judgment was properly entered against PSI based on its admission of liability in its answer to interrogatories. Now, that's the question before the panel. The panel has to determine whether or not the statement given by PSI was an unequivocal admission of a liability. And I'll tell you right now, you have trouble with me because I don't see it being unequivocal. I see it being somewhat hemmed and hawed. And if that's the case, the profanatory unquestionably had no authority to enter a judgment. Well, the garnish is enjoined from paying any debt or on behalf of the defendant. And I submit to you that those obligations or the statements that were made were not unequivocally an admission of money that was owed to them. They didn't take advantage of having counsel. They were given the right to have counsel, but they only had counsel involved after the judgment had been entered. The right to have counsel was really started back when they received the answers to interrogatories. Well, even the district court said that it wasn't improper for them to answer themselves. Admittedly, they should have counsel, but even the district court said that that's not an excuse to say they didn't have counsel. They made a statement, which even from my reading of it, is not unequivocal. Let me ask you, though. If it's unequivocal, what reading do you give to the rest of it after they say they owe this money to the SISP? What do you say the rest of that is? Well, when they say that MTC is owed the amount of $323,086 to MTC, then I go to the joint check agreement, where the joint check agreement governs the payment methodology, and PSI in no way assumes the obligation of U.S. pipelining suppliers, including MTC, pursuant to the language of the joint checking agreement. I submit to you with regards to the anybody can make a claim, and then the rest of that, where PSI is claiming $206,015 in change, I suggest to you that the agreement that PSI, and that is not admitted by U.S. pipelining as being owed to PSI, and I submit to you that the agreement that the two had, the subcontracting agreement, governs the law and jurisdiction with regards to disputes. So I'm saying to you that that is a disputed item, and litigation of any claims and disputes arising out of a relation to that agreement for a breach shall be instituted in the court of common place of York County, not in the federal court. So they had a remedy. They had the right to dispute or to exercise their right to go after that money. Council, incidentally, incidentally, let me get a question here because you're going on and on. Don't you agree that between the money allegedly owed under the check arrangement and the purported back charges that arose because of the defendant's failure to complete its work in a timely fashion, there will be nothing left for your judgment? Well, that's correct. That's absolutely correct. Well, then that's not an unequivocal admission of liability if they have all these back charges and everything. They're in effect saying, hey, look, there's some, we owe the money, but there's a lot that has to be paid before we owe that money. Well, and I submit to you that the language in Lancaster County Bank versus Gross, where it says in such a case, the court cannot go outside of the answers or receive extenuating proof to qualify or contradict. Now, I submit to you that the answer to interrogatory, it's US pipelining that still owes money to various contractors. And I say to you that they being US PSI would have to allege or go after the money that they are owed pursuant to the agreement that they had. So I don't know that, I think that at this point, it's a matter of interpretation of whether or not those additional statements rise to the level of being that Judge Sanchez inappropriately applied or interpreted the law. Well, how did the proclamatory exercise a purely ministerial duty when he entered judgment when there was this statement that there's a tremendous back charges and other problems with the money we owe? Well, wait a second, when you're using the term we owe, but that's essentially not the language in the answer to interrogatory. The answer was they being US pipelining still owes money to various contractors and suppliers. Okay. So I think that obviously they're saying they owe that money and we're going to be liable for it because they didn't pay their subs. Well, we don't know that they're going to be liable for it. And this is where I think that it's going beyond the four corners of the answer. So it makes the answer ambiguous, which means a proclamatory has no ministerial duty to enter judgment if it's up the air. Well, as Judge Sanchez stated that it did not raise to the level of an effective denial. So I think it really does boil down to, did Judge Sanchez... Well, what was it? If it wasn't a denial, what was the statement other than we owe the money, the rest of it? How do you characterize that? Well, I characterize it as US pipelining still owes money to various contractors. Okay. And you can go on and dig down into the weeds, but it is US pipelining that still owes that money. PSI is not obligated to pay that money. It is US... How do you get to say that? Where do you get that? Well, that's where I go and say that you're going beyond the four corners of the agreement. If PSI had had counsel and filed a claim under the exemption and defenses saying that they specifically had money due and owing to them because of ABCD agreements, that's one thing, but they didn't do that. They, in fact, didn't even file a claim for exemptions. So we're left to evaluating whether or not when it specifically says they, referring to US pipelining, still owes money to various contractors. It's a matter of interpretation. Do you go beyond that? Yes, US pipelining may owe other contractors, but is that PSI's obligation? And did PSI properly assert their defense and arguments properly or sufficiently to be able to make the denial a reversible denial or not a... Judge Fuentes, do you have a question, sir? Yeah, just one question here. As I see this, PSI, in response to a request from SANEC, said that it owed a balance and putting balance in quotes to USI pipelining, but I don't see that it ever stated precisely what it owed or that it unequivocally admitted liability. Can you address that? That PS... Wait, say that again, Judge. Well, the question is whether in response to a request for information, whether PSI admitted that it owed money to US pipelining, but it stated that it owed a balance. I don't know that it stated that it owed a precise amount to US pipelining. Well, it did. It said, it says exactly that, Judge. It says PSI still has an outstanding balance owed the defendant, a balance of $522,791. Can't get more specific than that. It's owed a balance. It's owed a balance. That's the words and the answer. Okay. PSI owes US pipelining that amount of money. Okay. And that's what you're trying to garnish. Is that accurate? That is correct. And for US pipeline, for PSI to say they, meaning US pipelining still owes money to various contractors, in my opinion, and so it was a Judge Sanchez that it did not properly, it did not raise any legal or factual issues wherein the court could construe it as an effective denial. Okay. All right. Thanks. Judge Cowan, anything further, sir? Nothing further, Attorney. Okay. And Judge Fuentes? No. No, thank you. Nothing further. All right. Great. We'll hear from counsel on rebuttal, and I believe you reserved three minutes. The clock is running. Thank you, Your Honor. Real quick, I wanted to address Your Honor's question about the Martin case, because I read it a little differently than Your Honor does. So in the Martin case, you have an attorney. So you have a defendant who has an attorney, and this attorney represented him in two cases. In one case, the attorney represented the defendant in his individual capacity. But in the other case, the attorney was representing the defendant as trustee of a trust. And that's super important, because when the plaintiff comes in and tries to garnish settlement funds related to the individual claim, the claim where he was represented as an individual, the attorney says, well, hold on a second. I have a setoff, and it's these fees that you incurred in your capacity as a trustee. And what the court said wasn't that you can't do a setoff at all. It said, look, these are essentially two different parties. One, the trust owes the fees. The other one is the person in his individual capacity has this settlement amount. So what the court was saying wasn't that you can't do a setoff at all. It's that you can't set off these fees that were against the amount that the individual that is being held by the attorney for the guy in his individual capacity. So it's a little bit different. And in fact, if you look at the rule case, the rule case is the one that Mr. Zanarich was speaking about earlier, where the bank had a sum of money in his possession, and it received a writ of execution. And the bank said, yes, we have $7,000 in our possession, but we also have all of these setoffs, this amount that we're owed by this defense. And the Supreme Court said, well, you don't have to give over $7,000. You only have to give over the part that's left over when you take out all those setoffs. And that's the 1984 case. It's a lot more recent than the 1865 Lancaster County Bank case, or even the Martin case. So it's pretty clear that these setoffs are a defense. And I want to go back to the contract, because the whole issue is, does PSI have property of U.S. pipelining in its possession? And U.S. pipelining's property rights are defined by the contract. So if U.S. pipelining isn't entitled to the funds under the contract, then there's no $522,000 because U.S. pipelining isn't entitled to it. And the contract says, yes, there's a contract balance, but PSI's entitled to subtract these amounts. It can subtract that amount that's owed to MTC. Irrespective of whether there's a joint check agreement, PSI's entitled to subtract that. It says that in the contract. You don't even need the joint check agreement. Same thing with the back charges. PSI's entitled to deduct these amounts that PSI incurred as a result of U.S. pipelining's conduct. So you have to go to the contract to determine what, this is another one of these situations where the property rights are defined by state law, and in this case, by the contract, by Pennsylvania state contract law. And under Pennsylvania state contract law, U.S. pipelining simply doesn't have a right to any money. And therefore, SANAC doesn't. Yes, your honor. No, I was just going to say thank you. Seems like a good time to say thank you, given that time has run out. Thank you, your honor. Yes, thank you. Thank you both, counsel, for vigorous arguments. We'll take the matter under advisement.